### NATIONAL REGISTERED AGENTS, INC.

#### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  **DIANE TIBEREND**
**ACC CAPITAL HOLDINGS CORPORATION**
**1100 TOWN & COUNTRY ROAD**
**SUITE 1200**
**ORANGE, CA 92868**

SOP Transmittal # **LA18550**

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Entity Served: AMERIQUEST MORTGAGE COMPANY (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of   **LOUISIANA**   on this **3** day of   **May**   , **2010**   . The following is a summary of the document(s) received:

1.  **Title of Action:** SHANNON A. DARDAR, ET AL VS AMERIQUEST MORTGAGE COMPANY, ET AL

2.  **Document(s) served:** Summons/Citation/Third Party Summons, Complaint/Petition/Third Party Complaint
    Other: PETITION; EXHIBIT "A"; EXHIBIT "B"

3.  **Court of Jurisdiction/**   22ND JDC FOR THE PARISH OF ST. TAMMANY, STATE OF LOUISIANA
    **Case & Docket Number:** 2010-12341

4.  **Amount Claimed, if any:**

5.  **Method of Service** (select one):
    ☒ Personally served by:   __ Process Server        ☒ Deputy Sheriff        __ U. S Marshall
    __ Delivered Via:          __ Certified Mail         __ Regular Mail          __ Facsimile
                               (Envelope enclosed)       (Envelope enclosed)

    __ Other (Explain):

6.  **Date and Time of Receipt:** 5/3/2010 10:44:28 AM EST (GMT -5)

7.  **Appearance/Answer Date:** WITHIN 15 DAYS

8.  **Received From:**                                    9.  **Federal Express Airbill #** 790211784150
    (Name, Address & Telephone Number)
                                                          10. **Call Made to:** VM - DIANE TIBEREND
                          No AG                               0037580578 P/O Internal
                                                             0047313002 LIQ
11.  **Special Comments:**                                    Predatory lending forgery
                                                             Appraisal fraud
**NATIONAL REGISTERED AGENTS, INC.**            Copies To:   SOL 3

Transmitted by Debbie Angle

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

**ORIGINAL**


EXHIBIT
A

SERVE

SHANNON A. DARDAR, ET AL

No.    2010-12341 D

Versus

**22nd Judicial District Court**

**Parish of St. Tammany**

AMERIQUEST MORTGAGE COMPANY,

**Louisiana**

ET AL

TO THE DEFENDANT      AMERIQUEST MORTGAGE COMPANY THROUGH ITS REGISTERED AGENT FOR

SERVICE OF PROCESS, NATIONAL REGISTERED AGENTS, INC., 1011 N. CAUSEWAY BLVD., STE. 3,

MANDEVILLE, LA 70471

You are hereby summoned to comply with the demand contained in the petition/ of which a true and correct copy (exclusive of exhibits) accompanies this citation, or make an appearance, either by filing a pleading or otherwise, in the 22nd Judicial District Court in and for the Parish of St. Tammany, State of Louisiana, within fifteen (15) days after the service hereof, under penalty of default judgment against you.

Witness the Honorable the Judges of said Court this      TH      day of    APRIL          A.D. 20    10

*Malise Prieto*, CLERK OF COURT

BY:    S/CONNIE GENNARO

**A TRUE COPY**

BY: C.... 22 W AUD D.C. COURT
ST. ...... CLERK OF COURT

ISSUED:4/23/10

SHANNON A. DARDAR    PO1

22186 STRAIN RD.

MANDEVILLE, LA 70471

Received on _____ , 20 _____ , and on the _____ day of _____ , 20 _____ ,

I served a true copy of the within _____ ,

on _____ in person,

at domicile with _____

in _____ Parish, a distance of _____ miles from

the Court House.

_____
Deputy Sheriff

Parish of _____

K-101

101-15

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

SHANNON A. DARDAR
AND
NANCY J. DEABATE

VERSUS

AMERIQUEST MORTGAGE
COMPANY
AND
DEUTSCHE BANK NATIONAL
TRUST COMPANY

FILED ___APR 0 8 2010___

**2 0 1 0 - 1 2 3 4 1**
CASE NO: _____

DIVISION: __D_____

S/CONNIE GENNARO

_____
**DEPUTY CLERK**

---

## PETITION

COMES NOW, Shannon A. Dardar (In Proper Person) and Nancy J. DeAbate (In Proper Person), plaintiffs who avers the following:

Shannon A. Dardar and Nancy J. DeAbate who are of full age and majority and domiciled in St. Tammany Parish.

Made Defendants herein are: Ameriquest Mortgage Company and Deutsche Bank National Trust Company.

Ameriquest Mortgage Company engaged in predatory lending as follows:

Affecting the following described property located in Mandeville, Louisiana.

ALL THAT CERTAIN LOT OR PARCEL OF LAND, and all the rights, ways, means, privileges, servitudes, prescriptions, appurtenances and advantages thereunto belonging or in any wise appertaining thereto, situated in the SUBDIVISION OF MANDABITA, which is a subdivision of the Northeast Quarter (NE ¼) of the Southwest Quarter (SW ¼) of Section 19, Township 7 South, Range 12 East, Greensburg Land District, St. Tammany Parish, Louisiana, more fully described according to map and plat of survey of E. J. Champagne, Surveyor of said-Subdivision dated May 28, 1954, being Map File No. 126A and more fully described according to map and plat of survey of Fred L. Tilley Surveyor, dated October 1, 1981 as follows, to wit:

Being all of Lot 19 and ten feet (10') more or less of Lot 18 of said Subdivision of Mandabita, more fully described according to map and plat of survey hereinabove referred to as follows, to-wit:

From the quarter section corner common to Section 19, Township 7 South, Range 12 East, and Section 24, Township 7 South, Range 11 East, go South 89 degrees 45 minutes East 1346.4 feet; thence go South 00 degrees 45 minutes West 584.0 feet; thence go North 84 degrees 28 minutes East 416.75 feet to an iron corner on the South line of the right of way of Strain Road and the point of beginning of the property herein described. Thence continue along the South line of the right of way of Strain Road, North 84 degrees, 28 minutes East, 134.5 feet to an iron corner, being the Northeast corner of said Lot 19; thence continue along the South line of the right of way of Strain Road, North 84 degrees, 28 minutes East, 10.05 feet to an iron corner; thence go South 00 degrees 40 minutes East 777.7 feet to an iron corner; thence go South 89 degrees 28 minutes West 10.0 feet to an iron corner, being the Southeast corner of Lot 19; thence continue South 89 degrees 28 minutes West 134.4 feet to an iron corner and the corner of a fence; thence go North 00 degrees 43 minutes East along the fence line 765.1 feet to an iron corner heretofore set as the point of the beginning.

Assessment #1120246018
2002 Taxes: Parish – Homestead Exemption

Municipally known as 22186 Strain Road, Mandeville, La 70471

## The predatory leading practices perpetrated by Ameriquest Mortgage Company on Plaintiffs are as follows:

1. Loan types and terms, including interest rates, origination fees, monthly payment amounts, terms of adjustable rates and fixed rate mortgages, and prepayment penalties.

2. Written disclosures including good faith estimate not provided to plaintiffs at closing, and other loan documents not provided by Ameriquest to the borrowers.

3. The devastation of repeat financing with Ameriquest.

4. The deception of what Ameriquest said they are going to do versus what happened.

5. Loan closing. Witnesses not present and said were not needed but witnesses appear on loan documents.

6. Forgery of our initials on loan document.

7. Appraisal, over encumbering the property.

8. Not accepting payments and waiting to process payments long after they were received.

9. The humiliation of forcing us to go bankrupt.

10. Stating that we had more land on the appraisal than we have.

11. Charging plaintiffs prepayment penalties when they called plaintiffs to refinance a loan we already had with them and charging a high refinance charges.

12. Any and all other discrepancies that arise from the two loans made by Ameriquest Mortgage Company.

13. Any and all other parties that may be responsible in whole or in part for the predatory lending practices perpetrated herein.

## SUMMARY OF FACTS

I was forced into bankruptcy by my Attorney so I wouldn't lose my house. I told my Attorney what I thought, that they over appraised the land or something but she said it was too hard to prove.

First this was brought to my attention about four months ago by Bob McCorkindale. There was no good faith truth in lending statement given to me. There was no knowledge to me that I was being charged a penalty to pay off the original loan. There were no witnesses in my house when I signed this loan, I was told they weren't needed, but there are witnesses that signed the loan document and I didn't even get a copy of the document. The Notary stated that he would send me one in the mail. Mine and my mothers initials are forged within this Loan Document. There was no reason to forge our initials if this loan was on the up and up that they could have contacted us to sign this paper! If I would have received a good faith statement or truth in lending statement or even a HUD statement I would not have made this loan!

The whole reason I made this loan was it was going to pay off my property next door and it be free and clear and I would have $30,000.00 to fix on the house and land but I wouldn't have enough to build a barn but I could live with that. So we made the loan. Not to mention they were

suppose to pay the IRS and the school board which were never paid by Ameriquest . On another statement it shows $35.000.00 sent in a wire and no IRS or School Board on it, which one was it is my question? The IRS levied my accounts not long after the loan. In the paper work it looks like they paid the IRS and the school board, it is called the Hud statement. On every loan packet that has been sent to us from The State of Louisiana Office of Financial Institutions, AHMSI, INC. (American Home Mortgage Servicing, Inc.), all of them are different. Shouldn't they all be he same, "yes"?

In a letter Mr. Gus McDaniel (letter is attached to this petition as exhibit A) sent to Killie A. Mule, who works for the Office of Financial Institutions, Baton Rouge, La. In the letter to her the Attorney Stated. and I quote, Findings: The appraisal reviewed both parcels but for purposes of value, only valued a total of 4.8 acres, not the total acreage of both parcels. Further and more significantly, the mortgage was secured by only ONE parcel. "note the appraisal for loan no. 0047313002 does not list both parcels in its legal description, but for purposes of value the appraisal only considered 4.8 acres in its estimate of value with a site value of $38,400 versus the appraisal for the previous loan no. 0037580578 which considered 7.8 acres with a site value of $58,000. (both estimates of value used a similar cost-per-acre; $7,500 & $8,000)".

It's amazing Mr. Gus McDaniel of the legal department for ACC answered the question that we have been saying. The one parcel of property that this loan was made on can not be 4.8 acres, both properties together are 4.8 acres, I wish I had 7.8 acres with the properties combined but I only have 4.8 acres with them both combined! This property should have only

been 2.55 acres. This proves that both properties were appraised together as we have said, They over appraised the property and withheld information so that they could make the loan no matter what the cost to us! If you want to get technical about it both parcels are 4.777 acres as you can see on the Survey **(that is attached to this petition as exhibit B)**! How could the title company have missed this. Not to see that someone made a mistake on the appraisal and on the acreage? How could this happen and the title company not see this? Why did they put a $30,000.00 title hold on this? Isn't that what they pay the title insurance Companies for, so mistakes like this aren't made? Don't they pull the title and match it to the appraisal to make sure that the appraiser didn't make a mistake on anything to do with the property or if there are any leans on the property? If everything would have been done on the up and up we would have never qualified for this loan. If they would have fully disclosed everything to me I would have never made the loan.

Mr. Gus McDaniel also stated in the attached letter that there wasn't an issue raised in bankruptcy court about the loan but to my recollection and Mrs. McPherson my attorney for bankruptcy there was an issue raised.

Mr. McDaniel also stated that we the borrowers did not receive any money at closing. We did not receive money at closing we received the money by wire after the loan was finalized. We never made the statement we never received any money.

Mr. McDaniel also stated borrowers have not received any loan documents or copies of their appraisal. His findings were that borrowers signed acknowledgements concerning receipt of their loan documents as well as the documents themselves. We did not receive copies of the loan

documents at signing because if we would have we would have proof that the witnesses were not present in our home when we signed the documents. We did not find out about the witnesses on the loan documents or the forged initials until Mrs. Mule sent us what Mr. McDaniel sent her. That is when we found out. As far as the appraisal, we called Ameriquest for a copy of the appraisal and were told we had to get it from the appraiser. When we called the appraiser they told us that they could not give us a copy because Ameriquest is the one that paid them for the appraisal, we had to get it from Ameriquest. We did not have a copy of the appraisal until Mrs. Mule sent all the documents to us that Mr. McDaniel sent to her.

Mr. McDaniel keeps referring back to the property description, to take everyone's eyes off of the appraisal. The property description is correct in the court house, but what they used to obtain the loan does not abide by the property description. And I reiterate, look at the survey attached to this petition, the portion of property the loan was made on is lot 19A in the survey and that is only 2.55 acres. But he states in his letter to Mrs. Mule that he didn't use both pieces of property which is 7.8 acres they only used 4.8 acres. So what is the purpose of the appraisal if we keep referring back to the property description and the appraisal acreage does not match the property description!

Mr. McDaniel also made a statement in his letter that we received the $30,000.00 but we did not apply it to any third party. It was to our understanding that Ameriquest was to pay off Ameriquest original loan and the Lenders Group leaving the land next to the home free and clear and leaving everything on the home and $30,000.00 for me to spend on the home and the land improvements.

Mr. McDaniel also stated in the letter that neither ACC, nor Ameriquest, nor AMC is the servicer for this loan. None of the aforementioned entities own the loan. The loan was sold shortly after origination. If a foreclosure has occurred on the property, it was completed by the owner of the note. Accordingly, neither ACC, Ameriquest nor AMC mortgage services have standing to affect any changes to the loan or ownership of the property. Only the current servicer acts on behalf of the owner of the note.

To my knowledge Ameriquest filed foreclosure papers which caused me to file chapter 13 bankruptcy and not any other company. So if Ameriquest sold the loan not long after origination why were we sending the payments to Ameriquest after bankruptcy?

My Attorney contacted me and it was to my understanding that if I didn't send in $44,830.30 that the Attorneys for Ameriquest was going to lift the stay on the loan. But it was also to my understanding that if I sent the Ameriquest Attorney the money that it would go to the principal. Interest and all late fees and Attorney fees would be forgiven. So I borrowed the money from a family member and sent it to the Attorney. Not long after that I started getting letters from Ameriquest stating that I owed $250,000.00 on a $205,000.00 loan. Didn't all of the money I was in arrears on Ameriquest when I went bankrupt get put into bankruptcy? I know I fell behind when I lost my job before I paid them the $44,830.30, so with the money that was put into bankruptcy that I owed Ameriquest and the $44,830.30 how can I owe them more than $205,000.00?

If you look at my payment history before this second loan with Ameriquest you will see that I was paying on time and to the principal every

month, and three months after that is when everything went to hell in a hand basket. Mr. Middleton with the Lenders Group called and said what is wrong, why aren't you paying your note. Is something wrong, you have never been late! I told him that he was paid off and he said not to my knowledge. I contacted Charlie Mire, who made the deal for Ameriquest. Mr. Mire said that he would look into it and get back to me. He contacted me back and stated that we didn't have enough equity in the home to pay the land next door off and make it free and clear. I argued with him that that is the whole reason I was making the loan. That is when he told me that he could fix it but I needed to go to the parish and merge the two properties together and make them one piece of property and he would re-do the mortgage and put the amount that I owed for the land with it. We sent the document from the parish by FEDEX showing that the land was joined. Ameriquest sent an appraiser out to appraise both pieces of property. It was the same appraisal company that came out for the second loan through Ameriquest. After she finished the appraisal, her and I got into an ugly argument because when she appraised the two pieces it came back the same price as the one piece of property with the home on it. I contacted Charlie Mire back and told him what the appraisal was, that is when he said that he would figure something out and get back with me. I tried to call him after that and they told me that he no longer worked with them. That is when another person from Ameriquest tried to help me but he said there was nothing that he could do. I think they had us join the two properties together in my opinion after they realized we may have caught on to what they really did so they wanted to cover their own butts and never intended to correct their mistake. Because now this one piece of property has two first

mortgages on it and with the amount of money I owe on these two properties that are now one is far more than the land is worth. So now I can't get another company to do a new loan even with the approval of the bankruptcy court I couldn't get a loan because I owe more that what the property is worth. I can't even sell a piece of my property because the parish won't let me split it back up to help with the money that I owe.

Nothing that I have been told with this loan is how it happened. These people went to great measures not to do the right thing and did everything to scam me and my mom. Why should the consumer suffer at the expense of someone saying we got the loan so they can line their pockets. No one will listen and I hope that you can help!

Also, we did not know that all of the appraisals were different until we received these documents from these different places that were sent to us and all this documentation was obtained from Ameriquest where it originated from and I guess passed down the line as the loan passed from company to company.

Ameriquest Attorney Mr. Gus McDaniel mentioned the class action against Ameriquest and said that anyone that opted to be in it could not bring action against Ameriquest. We did not choose to be in the class action. We were sent a packet to return and told how much we may get and we were offered $699.78. My mother and I decided not to be in the class action because what would $699.78 do for us.

The morning of 02/17/2010 we had to go to court on a different issue, so we decided to go into the land record office and get a copy of the first Ameriquest loan just to see what was on it. The loan amount is $103,200.00 on the first Ameriquest loan but on the HUD statement it says that they paid

$156,674.93 to pay off the first loan to themselves. Now we were never late on the payments and paid some directly to the principal so how could the payoff be $156,674.93 even if there was a pre-payment penalty on it. The difference would be $53,474.93 over and above the amount owed. Even if we added up to $15,000.00 extra and that is high for a pre-payment penalty, though we were never told about a pre-payment penalty it still would not add up to $156,674.93. So where did the rest of the money go for paying off the first Ameriquest loan? Who put that money in their pockets. What a wind fall for that person or company. We thought that we had enough equity in the house to pay off the land next door with the appraisal that they said we had so that is why we couldn't understand what happened to all of the money, now we know. But to add insult to injury and with all of the information that we have been requesting from AHMSI (American Home Mortgage Servicing, Inc.) out of Irving, Texas that is servicing the loan now. We received more information and also different information on an appraisal that came in. Apparently Ameriquest hired Johnson Property Solutions to do the second appraisal when we called and raised issues about the land next door not being paid off as we had thought it was and this appraisal came in at $142,000.00 with the proper acreage on the appraisal. Ameriquest must have not thought about shredding this document and it mistakenly went into a file and now that Ameriquest is out of business whom ever is forwarding this information to the company that is servicing the loan now must not know of the situation that Ameriquest created. We would not have qualified for the second mortgage had a proper appraisal been accepted in the first place like the one that Johnson Property Solutions did. I guess this appraisal was nixed and they went back to the appraisal

company that did the appraisal to get the second loan because if they would have used the other appraisal they knew they would have been blown out of the water with the amount being over $100,000.00 less than the other appraisal that got the loan approved. I don't think that appraisers are that much off from one another on appraisals and some influence by Ameriquest was a factor in the very high appraisal that was produced.

With the economy so bad since last year I have been out of work and not able to meet my obligations. The other company that has my land note has been working with me and we have an agreement made. Originally this Bank was also going to lift the stay but we worked out a plan.

Ameriquest has settled many class action lawsuits against them for predatory lending for hundreds of millions and now there is a new one and we just got the paperwork to join in the current one also which we will not do because we would forfeit all of our rights for a few hundred dollars and the Attorneys get the millions not the borrowers.

Karma catches up to us all sooner or later and I am going to assume that it caught up with Ameriquest because predatory lending has taken down a lot of companies and that is what is happening to this country now GREED among the people in power taking advantage of the consumer and Ameriquest is no longer in business because of it. That is why we are asking for your determination.

This buy out would not give the people that were wronged a chance to get real justice for their pain of losing their home and being duped by this company and lied to. Or going through bankruptcy and still losing everything because of greed and everyone that had been wronged by this company would have no recourse and that would be good for Ameriquest

because then they had a way to get away with what they had done to many people for a pittance if the people joined the class action. The people that did join I don't think realized just what they were giving away at the time. Thank God we did not and that still might not make any difference but we now are able to ask you to try and do something that might make a difference for a change against these people.

We have a lot of documentation that will be submitted at a later date.

**WHEREFORE,** Petitioner prays for judgment against the Defendants and in favor of the Plaintiffs and compensates Plaintiffs for all physical, mental anguish, stress and costs associated with the loan. the court costs and punitive damage and any and all other damages perpetrated by Ameriquest Mortgage Company and Deutsche Bank National Trust Company and any and all other parties that may be involved. We also ask this Honorable Court to have Ameriquest Mortgage Company and Deutsche Bank National Trust Company to produce proof of where the $53,474.93 over and above the amount of the first loan with Ameriquest went to and whom was it dispersed to or used for. We also pray that this Honorable Court does not allow whom ever holds the loan is not allowed to proceed with forecloseure proceedings until this matter is decided upon, and whatever other general and equitable relief to which Petitioner is entitled.

Respectfully Submitted,

Shannon A. Dardar (In Proper Person)
22186 Strain Rd.
Mandeville, Louisiana 70471
Phone Number: (985)373-5984
Fax Number: (985)893-6589
Email: black cloud1@bellsouth.net

_Nancy J. DeAbate_

Nancy J. DeAbate (In Proper Person)
22186 Strain Rd.
Mandeville, Louisiana 70471
Phone Number: (985)893-4410
Fax Number: (985)983-6589
Email: cheye438@bellsouth.net

**SERVICE INFORMATION:**
**PLEASE SERVE DEFENDANTS:**

AMERIQUEST MORTGAGE COMPANY
Through its Registered Agent for Service of process:
National Registered Agents, Inc.; 1011 N. Causeway Blvd. Ste. 3
Mandeville, La. 70471

DEUTSCHE BANK NATIONAL TRUST COMPANY
Deutsche Bank National Trust Company, Individually, and as trustee of/and
Ameriquest Mortgage Securities, Inc., assets backed pass through
certificates, Series 2003-X4, under pooling and servicing dated as of
November 1, 2003
~~Through the duly appointed curator ad hoc~~

DEUTSCHE BANK NATIONAL TRUST COMPANY
Through Their ATTORNEY
DEAN Morris, LLP, CANDACE A. COURTEAU
1505 North 19th STREET
MONROE, LA. 71207

AND

DEUTSCHE BANK NATIONAL TRUST Company
60 WALL STREET
NEW YORK, N.Y. 10005

A TRUE COPY

**ACC**

**FILED**
2010-1234 P
APR 0 8 2010

MALISE PRIETO · CLERK
S/CONNIE GENNARO
DEPUTY

Capital Holdings

**RECEIVED**
APR 20 2009
OFFICE OF
FINANCIAL INSTITUTIONS
BATON ROUGE, LOUISIANA

April 15, 2009

Via First Class Mail

Kellie A. Mule
Office of Financial Institutions
PO Box 94095
Baton Rouge, LA 70804-9095

Re:    Shannon A. Dardar & Nancy Deabate

Dear Ms. Mule:

As you may know, ACC, Ameriquest, Town & Country Credit Corporation, and AMC Mortgage Services, Inc. f/k/a Bedford Home Loans ("Ameriquest Parties") entered into a multi-state agreement with the states in January 2006 (Multi-State Agreement).  Pursuant to the Multi-State Agreement, $295,000,000 was given to the states to settle borrowers' claims relating to loans obtained between January 1, 1999 through December 31, 2005.  Borrowers had an opportunity to file a claim for recovery under the terms of the settlement and if a borrower elected to file such a claim under the Multi-State Agreement, that borrower released all of his or her claims against the Ameriquest Parties. In addition, the states released the Ameriquest Parties for those claims relating to certain Lending Practices pursuant to sections I. Q. and VII B. of the settlement agreement. Please refer to the following website for more information: http://www.ameriquestmultistatesettlement.com. A copy of the settlement agreement is available for your review on this website.  The website is unaffiliated with the Ameriquest Parties but rather is managed by the Ameriquest Multi-State Administrator, Rust Consulting, Inc. ("Claims Administrator").

Ameriquest Mortgage Company ("Ameriquest") is no longer originating loans and has no employees. It surrendered its license effective September 30, 2007. Certain assets of the loan's servicer, AMC Mortgage Services, Inc. ("AMC") – including the right to service this loan – were sold on September 1, 2007. AMC ceased servicing loans on September 30, 2007 after the loan servicing platform was transferred to Citi Residential Lending, Inc. ACC Capital Holdings ("ACC"), parent company to Ameriquest and AMC, is attempting to effect an orderly wind down of the companies. ACC itself has extremely limited staff but endeavors to respond to borrowers' complaint to the best of its remaining capabilities and resources, as detailed below.

ACC understands the complaint to be:

- Borrowers refinanced to combine 2 parcels into 1 and satisfy loans on both;
  - Finding: It appears that there was some discussion originally to combine two parcels and make a loan secured by both, but ultimately Ameriquest only refinanced its existing loan with the same exact collateral that had secured the prior loan that Ameriquest was refinancing: no new collateral (i.e., no new parcel of land) was added to the mortgage to secure the refinanced loan.
- Loan fees are excessive;
  - Finding: Fees were disclosed and in full compliance with state and federal law.
- Borrowers did not receive money at closing.
  - Finding: at least $30,000 was wired by the title company.
- Borrowers have not received any loan documents or copy of their appraisal;
  - Finding: Borrowers signed acknowledgements concerning receipt of their loan documents as well as the documents themselves. We enclose copies here.

*Exhibit A*

- The appraised value was inflated because it allegedly included both parcels.
  - Finding: The appraisal reviewed both parcels, but the appraisers arrived at a total of 4.5 acres, but the legal acreage of both parcels. Further and more significantly, the mortgage was secured by only ONE parcel. We enclose another copy (previously provided to borrowers in 2007).



Ameriquest originated loan no. 0047313002 May 31, 2003 as an internal refinance of Ameriquest loan no. 0037580578. Beginning in March 2004 – some 10 months after origination of loan no.0047313002 – servicing records show that Nancy Deabate began raising concerns similar to this most recent complaint. In her 2004 communication, Ms. Deabate claimed that (1) Ameriquest over-encumbered the property by securing the loan with two parcels, or alternatively (2) Ameriquest failed to payoff a prior lien on the parcels that Ameriquest had taken as collateral. When this issue was raised in 2004, loan servicing researched the matter and found that the property securing the mortgage under the title policy matched the property described in the mortgage itself. In June 2004 Ms. Deabate and Ms. Dardar raised the concerns again and this second complaint was forwarded to loan origination at Ameriquest to address. Ameriquest researched the complaint with title company, MIS, and MIS's findings matched the findings of Ameriquest. Ameriquest was unsuccessful in contacting Ms. Deabate and responded September 21, 2004 via the enclosed letter. We point out the legal description of the property that Ameriquest used to secure loan no. 047313002 is the same legal description of the property that secured the prior loan that Ameriquest had refinanced -- loan no. 0037580578, it is also the same property description that Ms. Dardar used in connection with Ms. Dardar's December 2004 Chapter 13 Bankruptcy proceeding. There was no issue raised concerning the validity of the security interest during the bankruptcy filing by either an objection to the proof of claim that was filed by the secured party or otherwise.

ACC's review does not support the contention that the loan was to combine two parcels into one, or satisfy the liens on both (some notes suggest it may have been for cash out for a barn). That is not to say that such action was not discussed or contemplated at some point; but ultimately, the transaction and loan documents that Ms. Deabate and Ms. Dardar executed, acknowledged and agreed to, did not combine both parcels and make a loan based on both parcels. Whatever effort that may have occurred, a loan based on the combined parcels never materialized. The signed HUD1 included with the complaint shows a disbursement to pay the prior Ameriquest loan along with a "TITLE/APPRAISAL HOLD" of $30,000.00. This "hold" possibly suggests that the status of the collateral was pending resolution of some outstanding issue that had not been resolved, but Ms. Deabate's and Ms. Dardar's signatures on it acknowledge awareness of the same.

According to the complaint, the $30,000 that was the subject of the "hold" in the HUD1 was sent directly to the borrowers and was not used to pay off any third party and the property itself was not taken, as far as the property description is concerned, as collateral for the loan. We are puzzled that the complaint acknowledges that MIS wired funds to the borrowers, but does not explain what became of those funds or why MIS took that action. If we accept the allegations in this most recent complaint on its face, we question why neither borrower raised an objection at the time the funds were disbursed to them instead of the lien holder on the second parcel because, as noted above, our records show Ms. Deabate did not begin to raise any concerns the first time until ten months after loan origination. We are also puzzled by the borrowers' assertion that a new mortgage or some other form of security instrument was recorded on the "new" or combined parcel several months later. We do not have any record to demonstrate that this occurred. If the borrowers have such information, we would be happy to look at it. The title company, MIS, no longer has a business relationship with Ameriquest.

With respect to the fees in dispute, Ameriquest's loan fees were disclosed and charged in full accordance with state and federal regulations.

With respect to the copies of loan documents, Ms. Deabate and Ms. Dardar did receive a copy of the loan documents, as evidenced by any number of documents they executed at loan closing wherein they acknowledge not only receiving copies, but understanding them as well. Notwithstanding, we enclose copies here.

As to a copy of the appraisal, Ms. Deabate and Ms. Dardar requested and received a copy of the Ameriquest appraisal from AMC Mortgage Services (the loan servicer at the time) on June 29, 2007 – please see the attached letter. Notwithstanding, we enclose another copy of AMC's response along with the first two pages of the prior appraisal. Note the appraisal for loan no. 0047313002 does list both parcels

in its "legal description", but for purposes of value, the appraisal only considered 4.5 acres in its estimate of value with a site value of $32,400, yet ██████████████ for this property, the not-███ 7680576 which considered 7.8 acres with a ███████ of 2.9 acres, their estimate of value used a similar cost-per-acre, $7,500 (███████████ 800).

Neither ACC, nor Ameriquest, nor AMC is the servicer for this loan. None of the aforementioned entities own the loan. The loan was sold shortly after origination. If a foreclosure has occurred on the property, it was completed by the owner of the note. Accordingly, neither ACC, Ameriquest nor AMC Mortgage Services have standing to effect any changes to the loan or ownership of the property. Only the current servicer acts on behalf of the owner of the note.

We trust the above answers the concerns.

Sincerely,

Gus McDaniel
ACC Legal Department



Survey of
LOTS No 18A & 19A • MANDABITA
SECTION 19, TOWNSHIP 7 SOUTH — RANGE 12 EAST
ST. TAMMANY PARISH, LOUISIANA
FOR
NANCY J. DeABATE
& SHANNON DARDAR



LOTS No 18A & 19A * MANDABITA
SECTION 19, TOWNSHIP 7 SOUTH — RANGE 12 EAST
ST. TAMMANY PARISH, LOUISIANA
INTO
LOT 19A1

*Bkcy case*
*09-3424*

**SERVE**

SHANNON A. DARDAR, ET AL      No.   2010-12341 D

**22nd Judicial District Court**

Versus

**Parish of St. Tammany**

AMERIQUEST MORTGAGE COMPANY,

**Louisiana**

ET AL

TO THE DEFENDANT   DEUTSCHE BANK NATIONAL TRUST COMPANY THROUGH THEIR ATTORNEY,

DEAN MORRIS, LLP, CANDACE A. COURTEAU, 1505 NORTH 19TH STREET, MONROE, LA 71207

You are hereby summoned to comply with the demand contained in the petition/ of which a true and correct copy (exclusive of exhibits) accompanies this citation, or make an appearance, either by filing a pleading or otherwise, in the 22nd Judicial District Court in and for the Parish of St. Tammany, State of Louisiana, within fifteen (15) days after the service hereof, under penalty of default judgment against you.

Witness the Honorable the Judges of said Court this   9TH   day of   APRIL      A.D. 20   10

*Malise Prieto*, CLERK OF COURT

A TRUE COPY

BY:   S/CONNIE GENNARO

DEPUTY CLERK OF COURT

ISSUED:4/23/10

SHANNON A. DARDAR   P01

22186 STRAIN RD.

MANDEVILLE, LA 70471

Received on         , 20      , and on the      day of        , 20     ,

I served a true copy of the within                   ,

on                                 in person,

at domicile with                        

in              Parish, a distance of              miles from

the Court House.

Deputy Sheriff

Parish of

K-101

101-15

**EXHIBIT**

B

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

SHANNON A. DARDAR
AND
NANCY J. DEABATE

CASE NO: 2010-12341

VERSUS

DIVISION: D

AMERIQUEST MORTGAGE
COMPANY
AND
DEUTSCHE BANK NATIONAL
TRUST COMPANY

APR 0 8 2010

FILED_____

S/CONNIE GENNARO

DEPUTY CLERK

---

## PETITION

COMES NOW, Shannon A. Dardar (In Proper Person) and Nancy J.

DeAbate (In Proper Person), plaintiffs who avers the following:

Shannon A. Dardar and Nancy J. DeAbate who are of full age and

majority and domiciled in St. Tammany Parish.

Made Defendants herein are: Ameriquest Mortgage Company and

Deutsche Bank National Trust Company.

Ameriquest Mortgage Company engaged in predatory lending as

follows:

Affecting the following described property located in Mandeville,

Louisiana.

ALL THAT CERTAIN LOT OR PARCEL OF LAND, and all the rights, ways, means, privileges, servitudes, prescriptions, appurtenances and advantages thereunto belonging or in any wise appertaining thereto, situated in the SUBDIVISION OF MANDABITA, which is a subdivision of the Northeast Quarter (NE ¼) of the Southwest Quarter (SW ¼) of Section 19, Township 7 South, Range 12 East, Greensburg Land District, St. Tammany Parish, Louisiana, more fully described according to map and plat of survey of E. J. Champagne, Surveyor of said Subdivision dated May 28, 1954, being Map File No. 126A and more fully described according to map and plat of survey of Fred L. Tilley Surveyor, dated October 1, 1981 as follows, to wit:

Being all of Lot 19 and ten feet (10') more or less of Lot 18 of said Subdivision of Mandabita, more fully described according to map and plat of survey hereinabove referred to as follows, to-wit:

From the quarter section corner common to Section 19, Township 7 South, Range 12 East, and Section 24, Township 7 South, Range 11 East, go South 89 degrees 45 minutes East 1346.4 feet; thence go South 00 degrees 45 minutes West 584.0 feet; thence go North 84 degrees 28 minutes East 416.75 feet to an iron corner on the South line of the right of way of Strain Road and the point of beginning of the property herein described. Thence continue along the South line of the right of way of Strain Road, North 84 degrees, 28 minutes East, 134.5 feet to an iron corner, being the Northeast corner of said Lot 19; thence continue along the South line of the right of way of Strain Road, North 84 degrees, 28 minutes East, 10.05 feet to an iron corner; thence go South 00 degrees 40 minutes East 777.7 feet to an iron corner; thence go South 89 degrees 28 minutes West 10.0 feet to an iron corner, being the Southeast corner of Lot 19; thence continue South 89 degrees 28 minutes West 134.4 feet to an iron corner and the corner of a fence; thence go North 00 degrees 43 minutes East along the fence line 765.1 feet to an iron corner heretofore set as the point of the beginning.

Assessment #1120246018
2002 Taxes: Parish – Homestead Exemption

Municipally known as 22186 Strain Road, Mandeville, La 70471

### The predatory lending practices perpetrated by Ameriquest Mortgage Company on Plaintiffs are as follows:

1. Loan types and terms, including interest rates, origination fees, monthly payment amounts, terms of adjustable rates and fixed rate mortgages, and prepayment penalties.

2. Written disclosures including good faith estimate not provided to plaintiffs at closing, and other loan documents not provided by Ameriquest to the borrowers.

3. The devastation of repeat financing with Ameriquest.

4. The deception of what Ameriquest said they are going to do versus what happened.

5. Loan closing. Witnesses not present and said were not needed but witnesses appear on loan documents.

6. Forgery of our initials on loan document.

7. Appraisal, over encumbering the property.

8. Not accepting payments and waiting to process payments long after they were received.

9. The humiliation of forcing us to go bankrupt.

10. Stating that we had more land on the appraisal than we have.

11. Charging plaintiffs prepayment penalties when they called plaintiffs to refinance a loan we already had with them and charging a high refinance charges.

12. Any and all other discrepancies that arise from the two loans made by Ameriquest Mortgage Company.

13. Any and all other parties that may be responsible in whole or in part for the predatory lending practices perpetrated herein.

## SUMMARY OF FACTS

I was forced into bankruptcy by my Attorney so I wouldn't lose my house. I told my Attorney what I thought, that they over appraised the land or something but she said it was too hard to prove.

First this was brought to my attention about four months ago by Bob McCorkindale. There was no good faith truth in lending statement given to me. There was no knowledge to me that I was being charged a penalty to pay off the original loan. There were no witnesses in my house when I signed this loan, I was told they weren't needed, but there are witnesses that signed the loan document and I didn't even get a copy of the document. The Notary stated that he would send me one in the mail. Mine and my mothers initials are forged within this Loan Document. There was no reason to forge our initials if this loan was on the up and up that they could have contacted us to sign this paper! If I would have received a good faith statement or truth in lending statement or even a HUD statement I would not have made this loan!

The whole reason I made this loan was it was going to pay off my property next door and it be free and clear and I would have $30,000.00 to fix on the house and land but I wouldn't have enough to build a barn but I could live with that. So we made the loan. Not to mention they were

suppose to pay the IRS and the school board which were never paid by Ameriquest . On another statement it shows $35.000.00 sent in a wire and no IRS or School Board on it, which one was it is my question? The IRS levied my accounts not long after the loan. In the paper work it looks like they paid the IRS and the school board, it is called the Hud statement. On every loan packet that has been sent to us from The State of Louisiana Office of Financial Institutions, AHMSI, INC. (American Home Mortgage Servicing, Inc.), all of them are different. Shouldn't they all be he same, "yes"?

In a letter Mr. Gus McDaniel **(letter is attached to this petition as exhibit A)** sent to Killie A. Mule, who works for the Office of Financial Institutions, Baton Rouge, La. In the letter to her the Attorney Stated. and I quote, Findings: The appraisal reviewed both parcels but for purposes of value, only valued a total of 4.8 acres, not the total acreage of both parcels. Further and more significantly, the mortgage was secured by only ONE parcel. "note the appraisal for loan no. 0047313002 does not list both parcels in its legal description, but for purposes of value the appraisal only considered 4.8 acres in its estimate of value with a site value of $38,400 versus the appraisal for the previous loan no. 0037580578 which considered 7.8 acres with a site value of $58,000. (both estimates of value used a similar cost-per-acre; $7,500 & $8,000)".

It's amazing Mr. Gus McDaniel of the legal department for ACC answered the question that we have been saying. The one parcel of property that this loan was made on can not be 4.8 acres, both properties together are 4.8 acres, I wish I had 7.8 acres with the properties combined but I only have 4.8 acres with them both combined! This property should have only

been 2.55 acres. This proves that both properties were appraised together as we have said. They over appraised the property and withheld information so that they could make the loan no matter what the cost to us! If you want to get technical about it both parcels are 4.777 acres as you can see on the Survey **(that is attached to this petition as exhibit B)!** How could the title company have missed this. Not to see that someone made a mistake on the appraisal and on the acreage? How could this happen and the title company not see this? Why did they put a $30,000.00 title hold on this? Isn't that what they pay the title insurance Companies for, so mistakes like this aren't made? Don't they pull the title and match it to the appraisal to make sure that the appraiser didn't make a mistake on anything to do with the property or if there are any leans on the property? If everything would have been done on the up and up we would have never qualified for this loan. If they would have fully disclosed everything to me I would have never made the loan.

Mr. Gus McDaniel also stated in the attached letter that there wasn't an issue raised in bankruptcy court about the loan but to my recollection and Mrs. McPherson my attorney for bankruptcy there was an issue raised.

Mr. McDaniel also stated that we the borrowers did not receive any money at closing. We did not receive money at closing we received the money by wire after the loan was finalized. We never made the statement we never received any money.

Mr. McDaniel also stated borrowers have not received any loan documents or copies of their appraisal. His findings were that borrowers signed acknowledgements concerning receipt of their loan documents as well as the documents themselves. We did not receive copies of the loan